**INSTITUTE FOR JUSTICE**
Jeffrey T. Rowes*
816 Congress Ave., Suite 960
Austin, TX 78701
TX Bar No. 24104956
jrowes@ij.org
(512) 480-5936
*Admitted *Pro Hac Vice*

**INSTITUTE FOR JUSTICE**
Keith E. Diggs
398 S. Mill Ave., Suite 301
Tempe, AZ 85281
AZ Bar No. 032692
kdiggs@ij.org
(480) 557-8300

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joshua Killeen; Emily Killeen; Ananda Retreat, LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>Yavapai County; David Williams, in his official capacity as Development Services Director,<br><br>*Defendants*. | No.:<br><br>**COMPLAINT** |

1. In this civil-rights case, Plaintiffs Joshua and Emily Killeen (the "Killeens"), and their business Ananda Retreat, challenge restrictions on protected speech and association that Defendant Yavapai County ("County") imposed to punish them for code violations. In March 2017, the Killeens bought 10 undeveloped acres for $9,000 in rural Yavapai County to build their American Dream: a minimalist, eco-conscious tiny home and a rustic event space for weddings and yoga retreats. In August 2018, the County cited them for code

violations in developing their property—violations that Plaintiffs do not contest and continue to work to rectify. In adjudicating their code violations, the County imposed a total ban on Plaintiffs' commercial speech and forbade them from holding free, non-commercial gatherings on their land for potluck food, yoga, and fellowship (called Wellness Wednesdays). These restrictions are unconstitutional, and Plaintiffs seek declaratory and injunctive relief to vindicate their First and Fourteenth Amendment rights.

## JURISDICTION AND VENUE

2. This Court has federal-question jurisdiction under 28 U.S.C. § 1331, the First and Fourteenth Amendments to the U.S. Constitution, the Civil Rights Act of 1871 as codified at 42 U.S.C. § 1983, and the Declaratory Judgments Act as codified at 28 U.S.C. §§ 2201, *et seq.*

3. Venue is proper under 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff Joshua Killeen is a U.S. citizen and resident of Yavapai County, Arizona, where he lives with his wife Plaintiff Emily Killeen.

5. Plaintiff Emily Killeen is a U.S. citizen and resident of Yavapai County, Arizona, where she lives with her husband Plaintiff Joshua Killeen.

6. Plaintiff Ananda Retreat, LLC, is an Arizona limited-liability corporation in good standing.

7. Defendant Yavapai County is a government body with the power to sue and be sued. A.R.S. §§ 11-201(A)(1), 11-202(A).

8. Defendant David Williams, sued only in his official capacity, is the Director of Yavapai County Development Services, the County's code-enforcement agency.

## FACTS

9. Joshua Killeen is a decorated combat veteran who served in Iraq as a crewmember of a rocket-launch system.

10. Joshua took up photography in Iraq, documenting his unit's action.

11. Joshua moved to San Diego after his discharge in 2007 and started a successful

1 wedding-photography business.

12. Like many returning veterans, Joshua struggled with alcohol abuse.

13. In 2015, Joshua began taking yoga classes at Sunset Yoga, which Emily founded and ran.

14. Emily had her own history of substance abuse.

15. Yoga was the key to Emily's recovery from drug addiction.

16. Emily taught Joshua how to use yoga to get sober.

17. Joshua and Emily fell in love, and Joshua pledged a life of sobriety to be with Emily.

18. Joshua and Emily are now married.

**The Killeens Make Yavapai County Their Home**

19. The Killeens decided to leave San Diego because the cost of living, especially the cost of buying a home, was prohibitive.

20. The Killeens wanted a fundamentally different personal and professional lifestyle in which they could avoid debt, live simply and sustainably, work less, and focus on family more.

21. In March 2017, the Killeens bought ten undeveloped acres in unincorporated Yavapai County at 1550 West Java Drive (APN 302-07-174A & 174C).

22. The Killeens call their new home "Ananda Retreat."

23. The Killeens conceived Ananda Retreat to serve several goals.

24. First, the Killeens wanted to live off the grid in an eco-friendly tiny home.

25. Next, the Killeens wanted a picturesque space to complement their work in photography and yoga teaching.

26. The Killeens intended to make Ananda Retreat available for group events such as weddings, family portraiture, and yoga classes.

27. The Killeens also wanted to host wellness retreats for those struggling with substance abuse or trauma, including special retreats for combat veterans like Joshua.

28. Finally, the Killeens needed Ananda Retreat—both the land and any

| | |
|---|---|
| 1 | improvements—to be affordable. |
| 2 | 29. Beginning in 2017, the Killeens started building Ananda Retreat. |
| 3 | 30. The Killeens built an 860-square-foot home for themselves and their daughter. |
| 4 | 31. The Killeens built a rustic barn for an event space. |
| 5 | 32. The Killeens also built a tipi. |
| 6 | 33. The Killeens landscaped Ananda Retreat and built a simple wooden arch over |
| 7 | the entrance. |

**Yavapai County Development Services Halts Progress**

34. When they built Ananda Retreat, the Killeens were unaware of Yavapai County zoning and permitting regulations.

35. The previous owner had assured the Killeens that no such regulations existed.

36. The Killeens thus did not get the permits the County requires.

37. On June 14, 2018, Yavapai County Development Services processed an anonymous complaint about Ananda Retreat.

38. Inspector Jacob Lane investigated on behalf of Yavapai County Development Services.

39. On June 28, 2018, Inspector Lane sent Plaintiffs a letter identifying violations of the Yavapai County Planning and Zoning Ordinance.

40. Inspector Lane's letter advised the Killeens to:

> Immediately stop activity, apply for and obtain a Use Permit for wedding Venue/ Retreat or Apply for and obtain a building permit for primary structure and waste water system or return the property to being vacant land.

41. The Killeens were startled to learn of the violations. They have always wanted to abide by environmental and safety standards.

42. When the Killeens received Mr. Lane's letter, Ananda Retreat was not yet open to the public.

43. The Killeens immediately canceled a free community potluck dinner that they had planned to hold on the Fourth of July.

4

44. On July 12, 2018, Joshua spoke on the phone with Inspector Lane and Yavapai County land-use manager Rebecca Borowski about permitting requirements.

### The Killeens Meet with Development Services on August 9, 2018

45. On August 9, 2018, the Killeens met in person with Yavapai County planning officials Tammy DeWitt and Elizabeth Glowacki.

46. At the meeting, Ms. DeWitt and Ms. Glowacki reviewed the Killeens' intended land uses and what permits would be required.

47. At the meeting, Ms. DeWitt advised the Killeens not to hold public events on the property.

48. Other than their own wedding and those of some close family members, the Killeens had never held public events at Ananda Retreat before the meeting with Ms. DeWitt.

49. The Killeens never held public events at Ananda Retreat after the meeting with Ms. DeWitt.

50. At the August 9, 2018 meeting, Ms. DeWitt did not advise Plaintiffs to cease advertising Ananda Retreat.

51. Plaintiffs never agreed to cease advertising Ananda Retreat.

### Plaintiffs' Advertisements for Ananda Retreat

52. Meanwhile, Inspector Lane continued his surveillance of Ananda Retreat and its website throughout July and August 2018.

53. Inspector Lane presented his findings in a September 4, 2018 Land Use Division Report for the Yavapai County Hearing Office.

54. Besides four photographs that Inspector Lane took of Ananda Retreat on June 27, 2018, Inspector Lane's surveillance file contained four Facebook screenshots.

55. On July 24, 2018, Plaintiff Joshua Killeen posted to Ananda Retreat's Facebook page, with a picture of the rustic barn:

> Come see how GREEEEEEN we are! Thank you monsoon season, we appreciate you! Book your special day today at Arizona's newest, self sufficient, 100% off grid, rustic/chic wedding venue! Grand opening

pricing still in effect, and we would love to welcome you to the Ananda Retreat family! Call to schedule your tour today!

56. Inspector Lane described this post as "Advertising Wedding Venue."

57. On August 8, 2018, Plaintiff Joshua Killeen posted to Ananda Retreat's Facebook page, with a picture of sunset over the tipi:

> Every. Single. Sunset…. seriously! Every single sunset at our beautiful Ananda Retreat is so special! Our ceremony space is placed beautifully to capture the lighting perfectly for your special day, and your "golden hour" photos are sure to stun! If you [or] anyone you know is looking for a dream wedding experience, be sure to tag/share! #booknow #arizonaweddingvenue #rusticwedding #rusticweddings #northernarizonaweddings #arizonaweddings #weddingvenues #weddings #weddingday #ceremonyarch #naturalweddings #anandaretreataz #weddingretreat #rusticchic

58. Inspector Lane described this post as "Advertising Dream wedding Experience."

59. On August 15, 2018, Plaintiff Joshua Killeen posted to Ananda Retreat's Facebook page, with another picture of a sunset over the tipi:

> We keep raving on the #anandaretreataz sunsets, well, I say for good reason! Take a look at this awesome southwest skyline! The Ananda Retreat Tipi makes for an amazing bridal suite to get ready in for your special day as well!! #rusticwedding #retreatwedding #arizonaweddings #northernarizonaweddings #bridalsuite #booknow #weddingdiscounts

60. Inspector Lane described this post as "Advertising Tipi for Brid[al] suite."

61. On August 21, 2018, Plaintiff Joshua Killeen posted to Ananda Retreat's Facebook page, with a picture of a baby sitting in the property's wild grasses:

> Looking for an amazing spot to have your family photos taken ALL INCLUSIVE?!?! Photography, beautiful scenery, ALL IN ONE, Ananda Retreat is the place to be! A big thanks to this little cutie and her amazing family for being so incredibly photogenic!

62. Inspector Lane described this post as "Advertising Photography Spot 'All Inclusive'."

63. After their meeting with Development Services on August 9, 2018, the Killeens never advertised anything that would occur before code compliance.

64. The purpose of Plaintiffs' advertising in the summer of 2018—and the purpose of the advertising that they want to resume—is generating public awareness and goodwill, identifying potential clients, inviting discussion with potential clients about how Ananda

Retreat might one day serve them, and creating a potential revenue stream with deposits for future events.

### Plaintiffs' "Wellness Wednesday" Yoga Potlucks

65. The County also misinterpreted the "public events" that the Killeens had been advertising.

66. On June 27, 2018, Inspector Lane observed that the Ananda Retreat website "invites members of the public to come to the property every Wednesday starting on July 4th for yoga and a Vegetarian Dinner."

67. In fact, the Killeens had invited "the public"—i.e., their neighbors—to Ananda Retreat for what they hoped would be regular community gatherings they called "Wellness Wednesdays."

68. The initial Wellness Wednesday scheduled for July 4, 2018, never happened. The Killeens canceled the events in response to Inspector Lane's letter advising them that they had code violations.

69. Wellness Wednesdays would not have been commercial events.

70. Wellness Wednesdays would have been free of charge.

71. Wellness Wednesdays would not have required the use of any structure on the Killeens' property.

72. The Facebook post that Mr. Lane identified for the first Wellness Wednesday did not list a price.

73. The Facebook post that Mr. Lane identified for the first Wellness Wednesday promoted a potluck vegetarian dinner in which each person attending would bring a dish to contribute to the meal.

74. Noncommercial social potlucks are exempt from regulation under Arizona's food-safety laws. A.R.S. § 36-136(I)(4)(A); A.A.C. R9-8-102(B)(12).

75. Wellness Wednesdays were promoted to the Killeens' friends and others in the community who might want to join their neighbors for vegetarian potluck dinners, yoga, and fellowship.

76. Wellness Wednesdays were intended as an expression of Plaintiffs' life philosophy centering around connections to family, friends, neighbors, and the wider community.

**Yavapai County Hearing Office Proceedings and the Prohibition on Commercial Speech**

77. On August 24, 2018, Inspector Lane served Joshua with a notice of violation, rules of procedure, rights and responsibilities, and notice of a hearing at the Yavapai County Hearing Office on September 4, 2018.

78. On September 4, 2018, Inspector Lane reviewed Ananda Retreat's Facebook page and observed that the "reported advertisements [are] still posted and accessible to the public."

79. Inspector Lane's September 4, 2018 report, on behalf of the County, recommended a $100 fine and a $7,500 sanction "to be suspended if the property is brought into compliance."

80. Proposing conditions of compliance, Inspector Lane recommended the Killeens "OBTAIN ISSUED PERMITS" and "CEASE ALL DISALLOWED NON-RESIDENTIAL ACTIVITY," or "REMOVE ALL STRUCTURES." The Killeens would also have to pass a compliance inspection.

81. In full, Inspector Lane's recommendation to "CEASE ALL DISALLOWED NON-RESIDENTIAL ACTIVITY" appeared as follows:

> 2. IMMEDIATELY CEASE ALL DISALLOWED NON-RESIDENTIAL ACTIVITY ON THE PROPERTY INCLUDING, BUT NOT LIMITED TO: WEDDINGS, RETREATS, GROUP PHOTOGRAPHY, WELLNESS CLINICS, YOGA CLASSES, POTLUCKS, CATERED EVENTS AND ANY OTHER TYPE OF PUBLIC GATHERING, UNTIL AN APPROVED USE PERMIT IS OBTAINED AND ALL STIPULATIONS SATISFIED[.]

82. Inspector Lane did not recommend the Killeens be ordered to stop advertising.

83. Instead, the idea to ban the Killeens from advertising originated at the public hearing at the Yavapai County Hearing Office on September 4, 2018.[1]

---

[1] Plaintiffs' counsel secured an audio recording of this hearing through Arizona's

84. This hearing was conducted by Hearing Officer Larry Jacobs. Defendant Williams, director of Yavapai County Development Services, as well as his staff members, appeared for Development Services.

85. At the hearing, Joshua reiterated that he had "made very clear in that preliminary code review [on August 9] that we [Killeens] have not had any—we had our own wedding. That's all we've done on the property. No commercial activity."

86. Joshua stressed that he and Emily had been openly communicating with Development Services throughout its investigation of Ananda Retreat.

87. Less than ten minutes later, Hearing Officer Jacobs stated that: "I have to look out for the public that are out there, you know, that might be responding to one of [Ananda Retreat's] Facebook ads."

88. Six minutes after that, Director Williams stated that: "What I may recommend is . . . perhaps a ceasing of all advertisement until the use permit is approved."

89. Six minutes after that, Hearing Officer Jacobs stated that: "I agree with Mr. Williams. I mean, if you're—you may not want to be doing *any* advertising or taking in *any* future requests to come to your property because I—I can't see all of this even being done within calendar year 2018."

90. The Yavapai County Planning & Zoning Ordinance does not authorize advertising restrictions as a remedy for code violations. *See* Yavapai Cty. Planning & Zoning Ordinance § 205.

91. Hearing Officer Jacobs postponed judgment by continuing the hearing to November 6, 2018.

92. Meanwhile, the Killeens had set out bringing Ananda Retreat into compliance as early as July 2018. Their efforts continued after the hearing of September 4, 2018.

**The Killeens' Acknowledgement and Administrative Judgment**

93. Sometime in early October 2018, Joshua visited Development Services and was given a form "Acknowledgement of Violation(s)" for him and Emily to consider, sign, and

Public Records Law, A.R.S. §§ 39-121, *et seq.*

return.

94. In relevant part, the form acknowledgement read:

> 2. IMMEDIATELY CEASE ALL DISALLOWED NON-RESIDENTIAL ACTIVITY, **AND ADVERTISING OF ALL DISALLOWED NON-RESIDENTIAL ACTIVITY,** ON THE PROPERTY INCLUDING BUT NOT LIMITED TO: WEDDINGS, RETREATS, GROUP PHOTOGRAPHY, WELLNESS CLINICS, YOGA CLASSES, POTLUCKS, CATERED EVENTS, **AND ANY OTHER TYPES OF PUBLIC GATHERINGS**, UNTIL AN APPROVED USE PERMIT IS OBTAINED AND ALL STIPULATIONS ARE SATISFIED[.] (emphases added in bold).

95. The form acknowledgement would "admit responsibility" for bringing Ananda Retreat into compliance, and would "agree that if compliance is not met," a $7,500 sanction would be recommended against the Killeens.

96. The plain meaning of "CEASE ALL . . . ADVERTISING OF ALL DISALLOWED NON-RESIDENTIAL ACTIVITY" is for the Killeens to stop all commercial speech related to Ananda Retreat.

97. The form acknowledgement's commercial-speech prohibition left no room for the Killeens to advertise Ananda Retreat without reference to any set date in general, "coming-soon" terms.

98. Defendants do not routinely prohibit businesses from advertising until code violations are resolved.

99. Defendants have never ordered a large chain business such as McDonalds or Home Depot to cease advertising when land-use violations are identified at the site of a new location.

100. Defendants have never issued an administrative land-use judgment imposing speech restrictions on a party represented at the administrative stage by an attorney.

101. The plain meaning of "CEASE ALL . . . POTLUCKS" and "ANY OTHER TYPES OF PUBLIC GATHERINGS" is for the Killeens not to hold the free, non-commercial Wellness Wednesday gatherings that they originally intended to begin holding on July 4, 2018.

102. The form acknowledgement's public-gathering prohibition applied to all

gatherings on the Killeens' property, whether in an unpermitted structure or outside.

103. The form acknowledgement's public-gathering prohibition left no room for the Killeens to host free, non-commercial community gatherings to share potluck dinners, yoga, and fellowship with their neighbors.

104. The form acknowledgement stated in bold type that "**This is not a binding agreement.**"

105. Instead, the form acknowledgement stated, also in bold type, that "**[t]he Hearing Officer will enter a judgment . . . explaining what the Defendant must do to comply with the applicable Ordinances and Codes.**"

106. When they gave Joshua the form acknowledgement, Tammy DeWitt, Rebecca Borowski, and/or Jacob Lane also told Joshua to take down Ananda Retreat's website.

107. The Killeens reasonably feared that, despite their wish to advertise, Yavapai County Development Services dictated whether the Killeens would ever realize their dreams for Ananda Retreat.

108. Their reasonable fear of Development Services induced the Killeens to sign the form acknowledgement.

109. The Killeens returned their signed acknowledgement on October 29, 2018.

110. That same day, the Killeens applied for as-built permits to bring Ananda Retreat into compliance.

111. Based on the Killeens' signed acknowledgement, Yavapai County Hearing Officer Peter Van Haren entered an administrative judgment against the Killeens on November 2, 2018.

112. The terms of the administrative judgment are substantially identical to the terms of the Killeens' signed acknowledgement.

113. The Killeens have not engaged in commercial speech for Ananda Retreat as a direct result of the prohibition in the November 2, 2018 judgment of the Hearing Officer.

114. The Killeens have not held a Wellness Wednesday as a direct result of the

prohibition in the November 2, 2018 judgment of the Hearing Officer.

**Developments Since the Administrative Judgment**

115. Since the hearing officer's judgment in November 2018, the Killeens have continued to bring Ananda Retreat into compliance.

116. On April 3, 2019, the Yavapai County Board of Supervisors voted unanimously to approve a conditional use permit for Ananda Retreat allowing residential and commercial activity on the property.

117. The Killeens have since fulfilled some, though not all, of the conditions of their use permit.

118. The Killeens have been diligent in working to fulfill the conditions of their use permit.

119. Their compliance efforts have often been delayed by lagging and/or inconsistent answers from County officials in response to the Killeens' questions.

120. Still, the Killeens have communicated in good faith with the County throughout the permit process.

121. At considerable expense, Plaintiffs submitted, and the County approved, a soil characterization report.

122. An approved soil characterization report is required to apply for a septic tank permit.

123. The Killeens secured a septic tank permit in August 2019.

124. Also at considerable expense, Plaintiffs have obtained a geotechnical report.

125. A geotechnical report is required to apply for a building permit.

126. Before the novel coronavirus pandemic, Plaintiffs were preparing to apply for an as-built permit for their tiny home.

127. For now, the novel coronavirus pandemic has halted all relevant activity at Ananda Retreat.

128. Nevertheless, Plaintiffs are determined to weather the pandemic and bring Ananda Retreat into compliance as soon as practicable.

129. As soon as Ananda Retreat is brought into compliance, Plaintiffs want to open it up for reservations.

130. Even before Ananda Retreat is brought into compliance, Plaintiffs want to advertise it for future reservations.

**INJURY TO PLAINTIFFS**

131. When Yavapai County compelled the Killeens to sign the October 29, 2018 Acknowledgement of Violation(s) document and issued the November 2, 2018 judgment, Plaintiffs ceased engaging in commercial speech related to Plaintiff Ananda Retreat.

132. But for the County's restriction on their commercial speech, Plaintiffs would have in the past continuously engaged in commercial speech of a general character to generate public goodwill, identify potential clients, and invite discussion with those clients about how Ananda Retreat might be able to serve their needs when it is lawfully able to hold events on their property.

133. But for the County's restriction on their commercial speech, Plaintiffs would in the future continuously engage in commercial speech of a general character to generate public goodwill, identify potential clients, and invite discussion with those clients about how Ananda Retreat might be able to serve their needs when it is lawfully able to hold events on their property.

134. But for the County's restriction on their commercial speech, past and present, Plaintiffs would have established relationships with potential clients that could have generated revenue in the form of deposits to accelerate the process of complying with the County's land-use requirements.

135. But for the County's restriction on their right to associate, the Killeens would have in the past held free Wellness Wednesday events on their property involving free potluck dinners, free yoga, and free fellowship among friends and members of the community who wish to become friends.

136. But for the County's restriction on their right to assemble, the Killeens would in the future hold free Wellness Wednesday events on their property involving free potluck

dinners, free yoga, and free fellowship among friends and members of the community who wish to become friends.

137. But for the County's restriction on their right to assemble, past and present, the Killeens would have enjoyed (and would enjoy in the future) non-commercial activities with friends and members of their community such as potluck dinners, yoga, and fellowship.

138. The loss of non-commercial dinners, yoga, and fellowship with friends and members of the community is a significant injury to the Killeens because a major reason for their relocation to rural Arizona was to live a simple, wellness-oriented life with authentic connections to the community around them—connections that Yavapai County's restriction on their right to associate have impeded and continue to impede.

## COUNT ONE

## Freedom of Speech

139. Plaintiffs incorporate and reallege paragraphs 1 to 138.

140. The First Amendment to the U.S. Constitution protects the right to engage in commercial speech about lawful activities.

141. The advertising ban entered in the administrative judgment of November 2, 2018, does not distinguish between: (1) general advertising for the purpose of generating goodwill, identifying potential clients for the future, and inviting conversations with potential clients about how Ananda Retreat could serve them in the future when lawful to do so; and (2) advertising specific events that would be illegal if held before the property is code compliant.

142. Weddings, wedding photography, yoga classes, and yoga retreats are all lawful activities.

143. The commercial speech in which Plaintiffs engaged in the past concerned lawful activity.

144. The commercial speech in which Plaintiffs wish to engage in the future concerns lawful activity.

14

145. The commercial speech in which Plaintiffs engaged in the past was not misleading.

146. The commercial speech in which Plaintiffs wish to engage in the future is not misleading.

147. Yavapai County has an interest in land-use compliance.

148. Prohibiting Plaintiffs from engaging in non-misleading commercial speech about lawful activity does not advance the County's interest in land-use compliance.

149. Prohibiting Plaintiffs from engaging in non-misleading commercial speech about lawful activity is not tailored to the County's interest in land-use compliance.

150. In imposing a speech ban on Plaintiffs, when not imposing speech bans on other speakers in Yavapai County with unresolved code violations, Defendants are making unconstitutional distinctions among speakers.

151. Requiring Plaintiffs to discontinue speaking as a condition of securing land-use permits is an unconstitutional condition.

152. Yavapai County's suppression of Plaintiffs' protected commercial speech had inflicted and continues to inflict irreparable harms.

153. Absent preliminary and permanent injunctive relief, these harms will continue indefinitely.

## COUNT TWO

### Substantive Due Process

154. Plaintiffs incorporate and reallege paragraphs 1 to 138.

155. The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution protects the right to make social invitations onto one's private property.

156. The right to make social invitations onto one's private property is deeply rooted in American history.

157. The Killeens want to extend social invitations onto Ananda Retreat by hosting their Wellness Wednesday events.

158. The Killeens' Wellness Wednesday events are noncommercial.

159. The Killeens' Wellness Wednesday events are open to their friends, and to members of the community who wish to become friends.

160. The Killeens want to hold Wellness Wednesday events to put their personal philosophy of life into action: making authentic connections with people in their community through vegetarianism, yoga, and fellowship.

161. Yavapai County's November 2, 2018 administrative judgment prohibits "wellness clinics . . . potlucks . . . and any other types of public gatherings," which refers to Plaintiffs' free, non-commercial Wellness Wednesday events that Mr. Lane identified as problematic in his September 4, 2018 report.

162. Yavapai County's administrative judgment has caused the Killeens not to hold free Wellness Wednesday events in the past.

163. Yavapai County's administrative judgment continues to cause the Killeens not to hold free Wellness Wednesday events.

164. Yavapai County lacks a compelling government interest in preventing the Killeens from inviting their friends and neighbors onto their private property to enjoy food, yoga, and fellowship.

165. Even if Yavapai County had a compelling government interest, the County's prohibition on Wellness Wednesdays is not narrowly tailored to serve that interest.

166. Yavapai County's administrative judgment prohibiting Wellness Wednesdays is also not rationally related to any legitimate government interest.

167. Yavapai County's suppression of the Killeens' due-process right to make social invitations onto their private property has inflicted and continues to inflict irreparable harms on the Killeens.

168. Absent preliminary and permanent injunctive relief, the Killeens will continue to experience irreparable harm indefinitely.

## COUNT THREE
### Equal Protection

169. Plaintiffs incorporate and reallege paragraphs 1 to 138.

170. The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution protects the right of similarly situated persons to be treated the same, not differently, by the government.

171. Here, Plaintiffs are similarly situated to other persons and entities that own property in Yavapai county, that are developing their property for commercial purposes, and that—prior to opening to the general public during the development process—are cited by Defendant Yavapai County for violations of zoning or permitting regulations.

172. As a matter of written Yavapai County policy, Defendants do not regularly impose restrictions on the speech of property owners who have violated County permitting and zoning regulations.

173. As a matter of unwritten Yavapai County policy, Defendants do not regularly impose restrictions on the speech of property owners who have violated County permitting and zoning regulations.

174. Defendant Yavapai County ordinances do not authorize Defendants to impose restrictions on the speech of property owners who have violated County permitting and zoning regulations.

175. Defendants have never imposed speech restrictions on large chain businesses, such as McDonald's or Home Depot, that have violated County land-use regulations while constructing a new location within Yavapai county.

176. Defendants have never imposed speech restrictions on a property owner who violated land-use regulations if that property owner was represented by an attorney at Defendant Yavapai County's administrative hearing on the violation.

177. Defendants imposed a speech restriction on Plaintiffs despite the fact that Plaintiffs were new property owners in the region, that Plaintiffs had no history of land-use violations, that there was no evidence that Plaintiffs' speech had in the past or would in the future harm anyone, and that Plaintiffs were working diligently to bring their property into compliance.

178. Because speech is a fundamental right, Defendants must satisfy heightened

scrutiny to justify its discrimination against certain speakers, such as Plaintiffs, and its discrimination in favor of other speakers, such as large chain businesses.

179. Here, Defendants singled out Plaintiffs for speech restrictions because of their modest means and lack of legal representation.

180. Defendants cannot prove that imposing a speech restriction on Plaintiffs on the basis of their limited financial means and lack of representation, while not imposing similar restrictions on speakers with greater financial means and legal representation, is tailored to advance any substantial government interest.

181. Yavapai County's suppression of Plaintiffs' protected speech had inflicted and continues to inflict irreparable harms.

182. Absent preliminary and permanent injunctive relief, these harms will continue indefinitely.

## PRAYER FOR RELIEF

A. Plaintiffs respectfully request preliminary and permanent injunctions enjoining Defendants' prohibition on advertising Ananda Retreat;

B. Plaintiffs respectfully request preliminary and permanent injunctions enjoining Defendants' prohibition on free Wellness Wednesday events;

C. Plaintiffs respectfully request a declaration that the prohibition on advertising violates the First Amendment right to commercial speech;

D. Plaintiffs respectfully request a declaration that the prohibition on free Wellness Wednesday events violates the Fourteenth Amendment right to associate on private property;

E. Nominal damages in the amount of $10.00;

F. Attorneys' fees and costs;

G. Any further relief that the Court deems just and proper.

Dated: May 26, 2020.

                      Respectfully submitted,

                      <u>/s/ Jeff Rowes</u>
                      Jeff Rowes*
                      INSTITUTE FOR JUSTICE
                      816 Congress Ave., Ste. 960
                      Austin, TX 78701
                      TX Bar No. 24104956
                      jrowes@ij.org
                      (512) 480-5936

                      Keith E. Diggs
                      INSTITUTE FOR JUSTICE
                      398 S. Mill Ave., Ste. 301
                      Tempe, AZ 85281
                      AZ Bar No. 032692
                      kdiggs@ij.org
                      (480) 557-8300

                      *Admitted *Pro Hac Vice*

                      *Attorneys for Plaintiffs*